UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT L. MURRAY,

                                  Plaintiff,

                                                                       9:13-CV-0186

v.                                                                       (GTS/TWD)

S. NEPHEW, G. PROVOST,

                                  Defendants.
_____

APPEARANCES:                                                    OF COUNSEL:

ROBERT L. MURRAY
Plaintiff pro se
276 East 171st Street, Room 4
Bronx, NY 10457

HON. ERIC T. SCHNEIDERMAN                  JUSTIN L. ENGEL, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

      This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Robert L. Murray claims that Defendants Sara Nephew and Gail Provost, both rehabilitation counselors at the Clinton Correctional Facility satellite of the Central New York Psychiatric Center, retaliated against him for filing an earlier lawsuit against Defendant Nephew. (Dkt. No. 5.) Currently pending before the Court is Defendants' motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56 and for attorney's fees pursuant to 42 U.S.C. § 1988. (Dkt. No. 54.) For the reasons discussed below, I recommend that the Court grant Defendants' motion for summary judgment but deny Defendants' request for attorney's fees.

## I.     FACTUAL AND PROCEDURAL SUMMARY

On December 5, 2012, Plaintiff filed a federal lawsuit against Defendant Nephew. *Murray v. Nephew*, Case No. 9:12-CV-1783 (FJS/CFH) ("*Nephew I*"), Dkt. No. 1. At that time, Defendant Nephew was serving as Plaintiff's primary therapist. (Dkt. No. 54-5 ¶ 3.) On February 8, 2013, United States Magistrate Judge Christian F. Hummel directed that the Clerk issue a summons and forward it and a copy of the complaint to the United States Marshal for service upon Defendant Nephew. *Nephew I*, Dkt. No. 8 at 3. The facility received the summons and complaint on February 21, 2013. *Nephew I*, Dkt. No. 11. Non-party Nancy Halleck, Acting Deputy Counsel for Litigation, acknowledged receipt of the summons and complaint on behalf of Defendant Nephew on March 11, 2013. *Id.* Defendant Nephew declares that her "best recollection" is that she first learned about *Nephew I* in December 2013, when the Assistant Attorney General handling the case informed her that this Court had granted a pre-answer motion to dismiss. (Dkt. No. 54-5 ¶ 7.) The docket for *Nephew I* reflects that Judge Hummel recommended dismissal on December 5, 2013. *Nephew I*, Dkt. No. 24. Senior United States District Court Judge Frederick J. Scullin, Jr., adopted the Report-Recommendation on December 27, 2013. *Nephew I*, Dkt. No. 28.

The events that form the basis of this litigation occurred in February 2013, after Plaintiff filed *Nephew I* but before it had been served on Defendant Nephew. *See generally* Dkt. No. 1. On February 4, 2013, Defendant Provost became Plaintiff's primary therapist. (Dkt. No. 54-8 ¶

8.) She scheduled Plaintiff for a mandatory call-out for 9:30 a.m. on February 13, 2013. *Id.*

Plaintiff, who had received Judge Hummel's order directing service of *Nephew I* on February 12, 2013, believed that Defendant Nephew had arranged the call-out. (Dkt. No. 5 at 4.) Plaintiff refused to go to the call-out "because I was in fear of my well being and . . . staff has be[e]n harassing me and put the[ir] hands on me and put[t]ing me in strip cells and th[e]y tr[i]ed to kill me." *Id.* At Defendant Provost's direction, correction officers made "several attempts" to get Plaintiff to leave his cell. (Dkt. No. 54-8 ¶ 9.) The correction officers issued several direct orders and explicitly warned Plaintiff that his failure to attend the mandatory call-out could result in disciplinary sanctions. *Id.*

After the third unsuccessful attempt to get Plaintiff to attend the mandatory call-out, Defendant Provost issued a misbehavior report charging Plaintiff with being out of place and refusing a direct order. (Dkt. No. 54-8 ¶ 10.) Plaintiff contends that Defendant Provost wrote the misbehavior report in retaliation for Plaintiff's filing of *Nephew I*. (Dkt. No. 5 at 4.) Both Defendant Nephew and Defendant Provost declare that they had no knowledge of *Nephew I* on February 13, 2013. (Dkt. No. 54-5 ¶ 5; Dkt. No. 54-8 ¶ 12.)

A disciplinary hearing was conducted regarding the misbehavior report on February 18, 2013. (Dkt. No. 54-13.) The hearing transcript states that Plaintiff refused to attend the hearing. *Id.* at 2.[1] Plaintiff contends that "I was wa[i]ting to go to the hearing but th[e]y never called me[.]" (Dkt. No. 5 at 5.) Plaintiff further contends that "officers came to my cell and told me I be[tt]er not go to the hearing and if I go som[e]thing would happen to me." *Id.* at 4-5. Plaintiff

---

[1] Citations to page numbers in the disciplinary hearing packet refer to the page numbers assigned by the Court's electronic filing system.

was found guilty and sentenced to thirty days in keeplock and loss of privileges. (Dkt. No. 54-13 at 5.)

Plaintiff filed the complaint in this action on February 19, 2013. (Dkt. No. 1.) He filed an amended complaint as of right on March 29, 2013. (Dkt. No. 5.) The amended complaint is the operative complaint. On August 13, 2013, the Court dismissed all of Plaintiff's claims except for the claim that Defendants Nephew and Provost retaliated against him for filing *Nephew I*. (Dkt. No. 7 at 21.) Defendants now move for summary judgment. (Dkt. No. 54.) Plaintiff has opposed the motion by re-filing his original complaint and his amended complaint as declarations. (Dkt. No. 56.) Defendants have filed a reply. (Dkt. No. 57.)

## II. LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id.* at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). In determining whether a genuine issue of material[2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

III.  **ANALYSIS**

    A.  **Retaliation Claim**

Plaintiff claims that Defendants Nephew and Provost retaliated against him for filing *Nephew I* by issuing a false misbehavior report against him on February 13, 2013. (Dkt. No. 5 at 4.) Defendants move for summary judgment of this claim, arguing that (1) it is barred by the doctrine of res judicata; (2) Plaintiff was not engaged in protected activity because *Nephew I* was a frivolous lawsuit; (3) Plaintiff cannot prove causation; (4) Plaintiff would have received the misbehavior report even in the absence of the alleged retaliatory animus; and (5) they are entitled to qualified immunity. (Dkt. No. 54-2.) The Court will address only the third and fourth arguments, as they most efficiently resolve the claim.

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted:

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official – even those

---

[2]  A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

5

>otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prove a retaliation claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action. *Gill*, 389 F.3d at 380 (citing *Dawes*, 239 F.3d at 492).

Here, Plaintiff has shown that he engaged in protected conduct by filing *Nephew I*. Prisoners "have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977).

Plaintiff has shown that Defendant Provost took adverse action.[3] The Second Circuit defines "'adverse action' objectively, as retaliatory conduct 'that would deter a similarly situated

---

[3] The record does not reflect any adverse action by Defendant Nephew. Although Plaintiff asserts that Defendant Nephew "had G. Provost RCII write a misbehavior report against me" (Dkt. No. 5 at 4), there is no evidence that Defendant Nephew was at all involved in that decision. Defendant Nephew declares that she had no idea that Defendant Provost had issued a misbehavior report until this lawsuit was filed. (Dkt. No. 54-5 ¶ 17.) She declares that she "never encouraged or directed Ms. Provost to issue the Misbehavior Report, and ha[s] no recollection of ever discussing the matter with Ms. Provost." *Id.* ¶ 18. Plaintiff's assertion that Defendant Nephew was involved is mere speculation without any basis in personal knowledge. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superseded by* 320 F.3d 346, 2003 U.S. App. LEXIS 13030, 2003 WL 360053 (2d Cir. Feb. 10, 2003)) (emphasis omitted). The Second Circuit has "made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Id*. "[T]here is little doubt that a misbehavior report would constitute an 'adverse action.'" *Anderson v. Leghorn*, Civ. No. 9:07-CV-1184 (DNH/RFT), 2011 U.S. Dist. LEXIS 16587, at *13, 2011 WL 691658, at *4 (N.D.N.Y. Jan. 24, 2011) (citation omitted).[4]

Plaintiff has not, however, shown any causal connection between *Nephew I* and the events of February 13, 2013. Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)). Those factors include: "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation." *Id.* (citing *Colon*, 58 F.3d at 872-73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

Here, there is no evidence suggesting the presence of the second, third, or fourth factors.

---

[4] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

The only evidence in the record even suggesting a causal connection is the fact that Plaintiff received Judge Hummel's order directing service of *Nephew I* the day before Defendant Provost issued the misbehavior report. (Dkt. No. 5 at 4.) The undisputed evidence shows, however, that neither Defendant Nephew nor Defendant Provost was aware of *Nephew I* on February 13, 2013. (Dkt. No. 54-5 ¶ 5; Dkt. No. 54-8 ¶ 12.) Indeed, the undisputed evidence shows that the *Nephew I* summons and complaint were not received by the facility until eight days after the misbehavior report was issued. *Nephew I*, Dkt. No. 11. Thus, Plaintiff has not raised a triable issue of fact that there was any temporal proximity between the protected conduct and the adverse action.

Even if Plaintiff had raised a triable issue of fact regarding temporal proximity, it would be insufficient to raise a triable issue as to a causal connection. The Second Circuit has held in the context of employment law that "[w]here timing is the only basis for a claim of retaliation . . . an inference of retaliation does not arise," particularly where other adverse actions preceded the protected conduct. *Slattery v. Swiss Rein. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).[5] Here, timing is the only basis supporting Plaintiff's claim of retaliation. Moreover, in other lawsuits Plaintiff has claimed that Defendant Nephew took adverse actions that preceded the protected conduct (filing *Nephew I* asserted here). *See, e.g.*, *Nephew I*, Dkt. No. 1. Thus, an inference of retaliation does not arise.

Defendants would be entitled to summary judgment even if Plaintiff had raised a triable issue of fact regarding a causal connection. When a plaintiff successfully raises a triable issue

---

[5] The Second Circuit routinely cites employment cases when discussing retaliation in the prison civil rights context. *See e.g. Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). Thus, it is appropriate to apply the *Slattery* rule here.

that an adverse action is causally connected to protected conduct:

> [t]he burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.

*Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (citations and internal quotation marks omitted). Here, the misbehavior report charged Plaintiff with refusing to obey a direct order and violating rules about inmate movement. (Dkt. No. 54-13 at 8.) Plaintiff admits that he refused to go to the mandatory call-out. (Dkt. No. 5 at 4.) Thus, there is no dispute that Plaintiff committed the prohibited conduct charged in the misbehavior report. Therefore, I recommend that the Court grant Defendants' motion for summary judgment.

**B.     Request for Attorney's Fees**

Defendants request $11,925 in attorney's fees pursuant to 42 U.S.C. § 1988 and "this Court's inherent authority to supervise and control its own proceedings." (Dkt. No. 54-2 at 22.[6]) Defendants argue that this litigation is vexatious and frivolous and that, accordingly, they are entitled to fees for defending against it. *Id.* at 22-23.

42 U.S.C. § 1988 allows the award of reasonable attorney's fees to the prevailing party in actions brought under 42 U.S.C. § 1983. Section 1988 "authorizes a district court to award attorney's fees to a defendant 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.'" *Fox v. Vice*, __ U.S. ___, 131 S.Ct. 2205, 2213 (2011) (quoting *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). This standard is quite

---

[6] Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

stringent. Specifically:

> [t]he fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees . . . . [A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so . . . . These limitations apply with special force in actions initiated by uncounseled prisoners. Faithful adherence to the principles of *Haines v. Kerner*[, 404 U.S. 519, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972)] dictates that attorney's fees should rarely be awarded against such plaintiffs. The fact that a prisoner's complaint, even when liberally construed, cannot survive a motion to dismiss does not, without more, entitle the defendant to attorney's fees. An unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims . . . . [E]ven if the law or the facts are somewhat questionable or unfavorable at the outset of litigation, a party may have an entirely reasonable ground for bringing suit.

*Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980) (internal quotation marks omitted). "Though a showing that the plaintiff acted in bad faith will further support an award under section 1988, the determination generally turns on whether the claim itself is clearly meritless." *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994). The Second Circuit is "hesitant to award attorney's fees to victorious defendants in section 1983 actions." *Id.*

Here, although Plaintiff does have a history of litigating claims against Defendant Nephew that are ultimately dismissed, the Court is cognizant of the stringent standard the Supreme Court has imposed on awards of attorney's fees to defendants and the Second Circuit's hesitation to award such fees. Plaintiff's retaliation claim was not "clearly meritless," as evidenced by the fact that it survived the Court's thorough initial review. (Dkt. No. 7.) Defendants will likely not face further litigation from Plaintiff, as he has been released. If he is someday re-incarcerated, Defendants may possibly find protection in the three-strikes provision

of 28 U.S.C. § 1915(g).[7] Accordingly, I recommend that the Court exercise its discretion to deny Defendants' request for attorney's fees.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 54) be **<u>GRANTED</u>**, and it is further

**RECOMMENDED** that Defendants' request for attorney's fees (Dkt. No. 54) be **<u>DENIED</u>**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Anderson v. Leghorn*, Civ. No. 9:07-CV-1184 (DNH/RFT), 2011 U.S. Dist. LEXIS 16587, 2011 WL 691658 (N.D.N.Y. Jan. 24, 2011).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: January 28, 2015
      Syracuse, New York

*[signature]*
Thérèse Wiley Dancks
United States Magistrate Judge

---

[7] The Court expresses no opinion as to whether Plaintiff has incurred three strikes.

**2011 WL 691658**
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Joel ANDERSON, Plaintiff,
v.
Michael LEGHORN, Captain, Eastern N.Y.
Corr. Facility; Dr. Guzman, Eastern N.Y. Corr.
Facility; and Maxine Moe # 1, Defendants.[1]

Civ. No. 9:07–CV–1184 (DNH/
RFT).   |   Jan. 24, 2011.

**Attorneys and Law Firms**

Joel Anderson, Attica, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State of New York, Shoshanah V. Bewlay, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

### *REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

**\*1** *Pro se* Plaintiff Joel Anderson filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights while he was housed at Eastern Correctional Facility. Within his Amended Complaint, Plaintiff asserted the following constitutional claims: (1) retaliation in violation of the First Amendment; (2) conspiracy to retaliate; (3) denial of access to the courts; (4) due process violations stemming from a Disciplinary Hearing; and (5) deliberate indifference to his health in violation of the Eighth Amendment. Dkt. No. 25, Am. Compl. at p. 2. Plaintiff also brought state tort claims of medical malpractice and intentional infliction of emotional distress. *Id.*

On October 10, 2008, Defendants filed a Motion to Dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b), which Plaintiff opposed. Dkt. Nos. 31 & 34.[2] On September 17, 2009, this Court issued a Report–Recommendation and Order, wherein we recommended that the District Judge grant Defendants' Motion in part and deny it in part; we further recommended that Plaintiff's Cross–Motion for Default be denied. Dkt. No. 36. Those recommendations were adopted in full by the Honorable David N. Hurd, United States District Judge. Dkt. No. 37. Accordingly, the surviving claims are as follows: (1) Plaintiff's retaliation claim against Defendant Michael Leghorn; (2) Plaintiff's access to courts claim against Defendants Mikhail Gusman and Maxine Moe # 1;[3] and 3) Plaintiff's state law claims. *Id.*

On May 18, 2010, the remaining Defendants filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 42. A response to that Motion was due on or before June 4, 2010. By September 22, 2010, the Court had not received any response from Plaintiff. In fact, there had been no communication from Plaintiff during that entire elapse of time. In light of his *pro se* status, the Court *sua sponte* extended Plaintiff's response deadline and further warned of consequences that could befall him should he fail to respond. Dkt. No. 43. On November 15, 2010, Plaintiff submitted to the Court a written notification of a change in his address. Dkt. No. 44. No mention was made of Defendants' Motion. To date, no response has been filed on Plaintiff's behalf, nor has any mailing been returned to this Court as undeliverable. Having provided Plaintiff ample opportunity to respond and ample warning of the consequences of his failure to do so, we address Defendants' Motion on their papers alone. For the reasons explained below, we recommend **granting** Defendants' Motion and **dismissing** this entire action.

### I. DISCUSSION

#### A. Standard of Review

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc .,* 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise

provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial."*St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000) (quoting FED. R. CIV. P. 56(e))."[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"*Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir.1994) (alteration and emphasis in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

**\*2** Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training."*Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *LaFond v. Gen. Physics Servs. Corp.,* 50 F.3d 165, 171 (2d Cir.1995). This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment.*Showers v. Eastmond,* 2001 WL 527484, at \*2 (S.D.N.Y. May 16, 2001).

Local Rule 7.1(a)(3) requires the non-movant to file a Statement of Material Facts that mirrors the movant's statement in matching numbered paragraphs and that sets forth a specific reference to the record where the material fact is alleged to arise. N.D.N.Y.L.R. 7.1(a)(3). More specifically, this Local Rule provides that *"[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."Id.* (emphasis in original). Courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 2002 WL 368534, at \*2 (N.D.N.Y. Mar. 1, 2002) (citing, *inter alia,* Bundy Am. Corp. v. K–Z Rental Leasing, Inc., 2001 WL 237218, at \*1 (N.D.N.Y. Mar. 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty Am. v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470–71.

### B. Access to Courts

Plaintiff asserts that Defendants Mikhail Gusman, M.D., and Maxine Moe # 1 violated his constitutionally protected right to access the courts by destroying Plaintiff's medical records after this civil lawsuit had commenced "in order to obstruct the proper litigation of the instant lawsuit, and/or otherwise thwart the future investigations that would be conducted by the Attorney General's Office as a result of this action having been filed."Am. Compl. at ¶ 45.

**\*3** It is well established that "prisoners have a constitutional right to access to the courts."*Bounds v. Smith,* 430 U.S. 817, 821 (1977). To establish standing for a claim for denial of right of access to courts, an inmate must show that he has suffered an actual injury traceable to the challenged conduct of prison officials—that is, that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. *Lewis v. Casey,* 518 U.S. 343, 353 (1996); *Cusamano v. Sobek,* 604 F.Supp.2d 416, 498 (N.D.N.Y.2009).

During the dates and times relevant to the Complaint, Defendant Dr. Mikhail Gusman served as the Health Services Director at Eastern .[4] Dkt. No. 42–3 [hereinafter "Defs.' 7.1 Statement"] at ¶ 30. In support of his request for summary judgment, Dr. Gusman provided the Court with a Declaration avowing he did not destroy Plaintiff's medical records. Dkt. No. 42–4, Mikhail Gusman, M.D., Decl., dated May 18, 2010. As evidentiary support, Dr. Gusman attaches the very records Plaintiff asserts had been destroyed. *Id.,* Ex. A. These statements and evidence have not been refuted by Plaintiff, thus we take them to be true. Furthermore, we note that substantively, Plaintiff has failed to identify the contours of his alleged injury. His Eighth Amendment claims have already been dismissed from this lawsuit and we are unaware of any other legal claim he may have to support his assertion that he was denied access to the courts. Accordingly, we recommend dismissal of this claim against

Defendant Gusman. Since an identical claim was lodged against Defendant Maxine Moe # 1, whom Plaintiff has yet to identify and serve, we similarly recommend dismissal.[5]

### C. Retaliation

As noted above, Plaintiff asserts that Defendant Leghorn retaliated against him. The following recitation of facts are derived from Defendants' Statement of Material Facts, which we take as true.

During the dates and times relevant to the Amended Complaint, Defendant Michael Leghorn worked as a captain at Eastern.[6] Defs.' 7.1 Statement at ¶¶ 1–2 & 5. As captain, Defendant Leghorn was charged with the duty to conduct rounds at Eastern. *Id.* at ¶ 5. Captain Leghorn had been informed by confidential sources that Plaintiff had been providing unauthorized legal assistance in the facility law library in exchange for compensation, *i.e.,* cigarettes, candy, etc. *Id.* at ¶ 6. On the morning of August 7, 2007, while conducting rounds in the law library, Captain Leghorn observed Plaintiff working on the computer terminal typing legal work for Inmate L. Ruiz. *Id.* at ¶ 7. When he questioned Plaintiff about the work he was conducting, Plaintiff closed and deleted the material from the computer screen and hard drive. *Id.* at ¶ 8. Perceiving this behavior as suspicious, Defendant Leghorn confiscated Plaintiff's paperwork and legal material involving Inmate Ruiz, along with Plaintiff's computer disc. *Id.* at ¶ 9. Plaintiff's disc contained legal work for Inmate D. Clarke. *Id.* at ¶ 10. At that point, Officer Petko[7] conducted a pat frisk of Plaintiff, who surrendered an envelope of papers from his pants pocket. *Id.* at ¶ 11. After reviewing those papers, Captain Leghorn confiscated additional legal and/or "inmate documentation" for Inmates A. Cruz and D. Perez. *Id.* at ¶ 12. After conducting further investigation, Captain Leghorn confirmed that Plaintiff did not have approval to assist or possess such legal work and/or to give legal assistance to Inmates Ruiz, Clarke, Cruz, and Perez. *Id.* at ¶ 13. A search of Plaintiff's cell revealed additional legal work for numerous other inmates with overdue and/or outdated authorization forms for inmates who were no longer housed at Eastern. *Id.* at ¶ 14. Captain Leghorn obtained additional confidential information supporting the fact that Plaintiff was approaching, seeking, and soliciting other inmates in order to provide unauthorized legal assistance in exchange for compensation. *Id.* at ¶ 15.

**\*4** When it was confirmed that Plaintiff did not have authorization to assist certain inmates with legal work, Captain Leghorn prepared an inmate misbehavior report, charging Plaintiff with violating various prison rules, including the rule prohibiting unauthorized legal assistance and possession of contraband; subsequently, at conclusion of a disciplinary hearing, Plaintiff was found guilty of violating these rules.[8] *Id.* at ¶¶ 16–17; Dkt. No. 42–6, Michael Leghorn, Decl., dated May 18, 2010, Ex. A.

In his Amended Complaint, Plaintiff asserts that Defendant Leghorn filed that misbehavior report against him in retaliation for his role in helping a fellow inmate bring a civil rights lawsuit against several correctional officials, including Defendant Leghorn. Am. Compl. at ¶¶ 13 & 20–21; *see also Andino v. Spitzer, et al.,* Civ. No. 9:06–CV–509 (FJS/DEP) (N.D.N.Y.).[9]

In order to state a valid retaliation claim, a plaintiff must allege that his actions were protected by the Constitution and that such "conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted). Thus, there must be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (citation omitted).

In our previous decision, upon a full legal analysis, we determined that Plaintiff exercised his protected First Amendment right when he provided legal assistance to fellow inmates, presuming that he did so within the contours of prison regulations. *See* Dkt. No. 36 at pp. 11–14 (noting that while this First Amendment right is not entitled to special protection and therefore may be regulated, for retaliation purposes, it constitutes an exercise of a First Amendment right). And there is little doubt that a misbehavior report would constitute an "adverse action." *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003) ("Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation.") (citation omitted). Thus, we must examine whether the exercise of this protected right was a "substantial or motivating factor" for the misbehavior report authored by Leghorn. Factors relevant to this consideration include: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing;

and (4) defendants' statements regarding their motive for the discipline. *See Colon v. Coughlin,* 58 F.3d 865, 872–73 (2d Cir.1995).

In support of his request for summary judgment, Defendant Leghorn submits a Declaration, wherein he avers that he was served with process in the *Andino* matter on March 13, 2007, almost five months prior to the incident with Plaintiff in the law library. Leghorn Decl. at ¶ 20. That lawsuit charged Leghorn with violating Inmate Andino's due process rights during a disciplinary hearing that Leghorn presided over. *Id.* at ¶ 20.Leghorn declares he has no recollection of ever being aware that Plaintiff had any connection with that case. *Id.* at ¶ 21.Ultimately, Plaintiff was found guilty at the disciplinary hearing of possessing contraband and providing unauthorized legal assistance. *Id.,* Ex. B. And, Plaintiff admits that he "did not have authorization to posses" the confiscated legal documents that belonged to other inmates, though, he denies providing those inmates with any type of legal assistance. Am. Compl. at ¶ 19.

**\*5** In our estimation, based on the above, Plaintiff has not established that his participation in the *Andino* matter was a substantial or motivating factor to Defendant Leghorn's issuance of the misbehavior report. Even if the Court were to presume that Plaintiff's legal aid to other inmates on the whole, and not one specific inmate, served as the basis for the alleged retaliation, such claim still fails. In situations where a defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendant to show that he would have taken the same action absent the retaliatory motive. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citing, *inter alia, Mount Healthy Sch. Dist. v. Doyle,* 429 U.S. 274, 287 (1977)). Defendant Leghorn avers that he had a legitimate disciplinary reason for issuing the misbehavior report: Plaintiff's overt violation of prison rules, which Plaintiff admits. Leghorn Decl. at ¶ 28; Am. Compl. at ¶ 19. Accordingly, Plaintiff's retaliation claim cannot survive summary judgment.

### D. State Claims

Plaintiff alleges state law claims for medical malpractice and intentional infliction of emotional distress. Since we recommend that the federal claims be **dismissed** from this action, we also recommend **dismissal** of the pendent state law claims pursuant to 28 U.S.C. § 1367, which authorizes a federal court to decline to exercise supplemental jurisdiction over a state claim if all of the claims over which the court had original jurisdiction were dismissed. 28 U.S.C. § 1367(c)(3).

### II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Defendants' Motion for Summary Judgment (Dkt. No. 42) be **GRANTED** and this case be **DISMISSED;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.****Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also*28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

Footnotes

1   At Plaintiff's request, Defendant William D. Brown was dismissed from this action on November 21, 2008. Dkt. No. 33 & Oral Order, dated Nov. 21, 2008. Furthermore, on October 1, 2009, the Honorable David N. Hurd, United States District Judge, adopted this Court's recommendations in full and dismissed Defendants LaPolt, Brown, and Bashvar from this action.Dkt. No. 37.The caption above reflects only the remaining Defendants.

2   Plaintiff also filed a Cross–Motion for Default Judgment.Dkt. No. 34.

3   In recommending that Plaintiff's claims against the unidentified Defendant proceed, this Court directed Plaintiff to take "reasonable steps to ascertain her identity" and that the action would be dismissed against her if she was not properly served. Dkt. No. 36 at pp. 17–18.To date, Plaintiff has not identified this Defendant, nor effected service on her. Having provided Plaintiff with proper notice,

|   |   |
|---|---|
|   | dismissal without prejudice would be warranted under Federal Rule of Civil Procedure 4(m). However, as discussed herein, because Plaintiff's claim against this unidentified Defendant lacks merit, we recommend dismissal with prejudice. *See infra* Part I.B. |
| 4 | Dr. Gusman currently holds this same position at Eastern. Defs .' 7.1 Statement at ¶ 30. |
| 5 | Plaintiff has been admonished on multiple occasions of his responsibility to identify this Defendant and effect proper service.Dkt. No. 24 at p. 3; Dkt. No. 36 at pp. 17–18; Dkt. No. 37 at p. 3. As the claims set forth against this unidentified Defendant lack merit, there is no need for the Court to examine the efforts Plaintiff made to effect timely service on this individual. |
| 6 | Defendant Leghorn is currently retired from the Department of Correctional Services (DOCS). Defs.' 7.1 Statement at ¶ 1. |
| 7 | Officer Petko is not named as a Defendant in this lawsuit. |
| 8 | Plaintiff was exonerated of two other charges contained in the misbehavior report. Dkt. No. 42–6, Michael Leghorn Decl., dated May 18, 2010, Ex. B. |
| 9 | Plaintiff further indicates that he and Andino intended the lawsuit to be a class-action, but "for reasons not pertinent to this complaint [Plaintiff] did not enter the action and was awaiting teleconferencing from the Court in [ ] order to give evidence in that case."Am. Compl. at ¶ 13. Thus, Plaintiff was not a party to Andino's lawsuit, but he alleges to have assisted Andino in drafting his complaint and was prepared to offer evidence in support of Andino's claims. |

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.